IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT



No. 13-30796

D.C. Docket No. 2:11-CV-2730

United States Court of Appeals
Fifth Circuit
**FILED**
June 5, 2014
Lyle W. Cayce
Clerk

DARNELL DEON BALONEY,

    Plaintiff

v.

ENSCO OFFSHORE COMPANY; STONE ENERGY OFFSHORE, L.L.C.,

    Defendants-Third Party Plaintiffs – Appellees

v.

BAYOU INSPECTION SERVICES, INCORPORATED, doing business as Bayou Testers, Incorporated,

    Third Party Defendant - Appellant

Appeal from the United States District Court for the
Eastern District of Louisiana, New Orleans

Before KING, SOUTHWICK, and GRAVES, Circuit Judges.

JUDGMENT

This cause was considered on the record on appeal and was argued by counsel.

It is ordered and adjudged that the judgment of the District Court is affirmed.

IT IS FURTHER ORDERED that appellant pay to appellees the costs on appeal to be taxed by the Clerk of this Court.

ISSUED AS MANDATE: 2 7 JUN 2014

A True Copy    2 7 JUN 2014
Attest

Clerk, U.S. Court of Appeals, Fifth Circuit
By: *Dantrell C. Johnson*
Deputy

New Orleans, Louisiana

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 13-30796

United States Court of Appeals
Fifth Circuit
**FILED**
June 5, 2014
Lyle W. Cayce
Clerk

DARNELL DEON BALONEY,

                Plaintiff

v.

ENSCO OFFSHORE COMPANY; STONE ENERGY OFFSHORE, L.L.C.,

                Defendants-Third Party Plaintiffs - Appellees

v.

BAYOU INSPECTION SERVICES, INCORPORATED, doing business as Bayou Testers, Incorporated,

                Third Party Defendant - Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:11-CV-2730

Before KING, SOUTHWICK, and GRAVES, Circuit Judges.

PER CURIAM:[*]

    This appeal concerns the enforceability of an indemnity clause in a contract between Bayou Inspection Services, Inc. and Ensco Offshore Co. The district court determined the indemnity clause was enforceable because it was

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

governed by maritime law which recognizes the enforceability of such clauses, and not by Louisiana law which does not. We AFFIRM.

## FACTS AND PROCEDURAL HISTORY

Darnell Baloney was injured in the Gulf of Mexico while working on the ENSCO 99, a mobile offshore drilling unit ("MODU"). The ENSCO 99 is a "jack-up drilling rig" that, after the legs of the floating rig are lowered to the seabed, is jacked up above the water. The important facts are undisputed. Ensco Offshore Co. is a drilling company that furnishes MODUs for use in an offshore environment to energy companies that need its services. Stone Energy Offshore, LLC, the owner of an offshore lease in the Gulf of Mexico, entered into an agreement with Ensco in which Ensco would provide offshore well drilling services on this lease. Pursuant to this agreement, Ensco transported the ENSCO 99 to Stone's offshore lease, extended its legs into the floor of the Gulf of Mexico, and began drilling operations.

Bayou Inspection Services, Inc., performs non-destructive x-ray and magnetic particle testing on welded surfaces. Ensco and Bayou entered into a master services agreement ("MSA") containing various terms that would govern any future contractual work performed by Bayou for Ensco. This agreement contemplated that future work orders would detail the specific tasks to be performed. Bayou agreed in the MSA to defend and indemnify Ensco against any claims arising from injury to Bayou's employees in connection with work performed under the agreement. Bayou also agreed to carry certain insurance and to name Ensco as an "additional insured" in its policies. In the MSA, Bayou acknowledged that Ensco "performs its services under contract with various energy related companies, sometimes referred to as 'Operators,'" and agreed "to extend the benefit of [its] indemnification and

2

insurance, including additional insured status . . ., to any Operator for whom [Ensco] may be performing services under written Contract."

In November 2012, Ensco called in a work order to Bayou for inspection of welds using x-ray photography and magnetic particle testing. The x-ray photography was to be used to check welds on drilling pipeline. The magnetic particle testing was to be used to check welds on the boom of a crane attached to the ENSCO 99. Baloney and Paul Brummet, both Bayou employees, were assigned to the ENSCO 99 job. Baloney spent one day aboard the ENSCO 99 performing x-ray testing on pipeline without incident. The following day, he completed the x-ray testing and began the magnetic testing on the crane. At the time of his alleged injury, Baloney was inspecting the welds on the boom of one crane attached to the ENSCO 99 while suspended in a personnel basket from another crane on the ENSCO 99. The crane operator allegedly caused the basket to hit the crane's cable, jerking the basket and injuring Baloney.

Baloney sued Ensco and Stone in federal court to recover for his injuries. Ensco and Stone both filed third-party complaints against Bayou seeking defense and indemnification based on the provisions of the MSA. Baloney's claims against Stone were dismissed. His remaining claims were eventually settled, leaving only the contract dispute between Ensco, Stone, and Bayou remaining. The parties filed cross motions for summary judgment. The district court granted summary judgment in favor of Ensco and Stone. The court held that the contract between Ensco and Bayou was a maritime contract, and that maritime law therefore applied. The court further held that the contract's defense and indemnity provisions were enforceable under maritime law and that Ensco and Stone were contractually entitled to these benefits. Bayou appeals, arguing that the contract is non-maritime, that Louisiana law applies, and that the Louisiana Oilfield Indemnity Act renders

the indemnity provision null and void. Whether the Ensco–Bayou contract is a maritime contract controls the outcome of this appeal.

## DISCUSSION

A district court's grant of summary judgment is reviewed *de novo*. *Prison Legal News v. Livingston*, 683 F.3d 201, 211 (5th Cir. 2012). Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *Id.*

The Outer Continental Shelf Lands Act ("OCSLA") applies federal law to "devices" attached to the seabed within the geographical reach of the Act:

> The Constitution and laws and civil and political jurisdiction of the United States are extended to the subsoil and seabed of the outer Continental Shelf and to all artificial islands, and all installations and other devices permanently or temporarily attached to the seabed, which may be erected thereon for the purpose of exploring for, developing, or producing resources therefrom, . . . to the same extent as if the outer Continental Shelf were an area of exclusive Federal jurisdiction located within a State.

43 U.S.C. § 1333(a)(1). A jack-up rig temporarily attached to the Outer Continental Shelf is a "device" that falls within this statute. *Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 213 (5th Cir. 2013).

OCSLA also establishes when laws of adjacent states will apply:

> To the extent that they are applicable and not inconsistent with this subchapter or with other Federal laws and regulations . . ., the civil and criminal laws of each adjacent State . . . are declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon, which would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf. . . .

43 U.S.C. § 1333(a)(2)(A).

As a result of these provisions, state law will apply as surrogate federal law under OCSLA if these three conditions are met:

4

(1) The controversy must arise on a situs covered by OCSLA (*i.e.* the subsoil, seabed, or artificial structures permanently or temporarily attached thereto).

(2) Federal maritime law must not apply of its own force.

(3) The state law must not be inconsistent with Federal law.

*Union Tex. Petroleum Co. v. PLT Eng'g, Inc.*, 895 F.2d 1043, 1047 (5th Cir. 1990). The second condition is the focus of the parties' dispute. "For disputes arising out of contracts — including indemnity contracts for offshore drilling — the courts of this circuit have held that if the contract is a maritime contract, federal maritime law applies of its own force, and state law does not apply." *Demette v. Falcon Drilling Co., Inc.*, 280 F.3d 492, 497 (5th Cir. 2002), *overruled on other grounds by Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778 (5th Cir. 2009) (en banc). Accordingly, if the contract between Ensco and Bayou is a maritime contract, maritime law applies to this case.

When deciding whether a contract is maritime in nature, this court first examines the historical treatment of similar contracts in our jurisprudence, then considers six fact-specific questions. *Davis & Sons, Inc. v. Gulf Oil Corp.*, 919 F.2d 313, 316 (5th Cir. 1990). Our historical treatment can make the subsequent fact-specific inquiry unimportant, but only when the nature of the contract in question has been clearly answered. *Hoda v. Rowan Companies, Inc.*, 419 F.3d 379, 381 (5th Cir. 2005). We will first analyze the history of contracts such as the one here, then identify and answer the six questions.

### A. Historical Treatment of Similar Contracts

The district court briefly surveyed our jurisprudence and determined that it leaned in favor of finding that Ensco and Bayou had entered into a maritime contract, but the history was not so clear as to render a fact-specific inquiry superfluous. As the district court correctly recognized, when it comes

5

to determining whether contractual services performed on a jack-up rig have a sufficiently "salty flavor" such that they are maritime, our precedent has not established a clear boundary between sea and land. *See Hoda*, 419 F.3d at 382-83. One of our decisions called this area of the law a "marshland." *Domingue v. Ocean Drilling and Exploration Co.*, 923 F.2d 393, 393-94 (5th Cir. 1991). Nonetheless, the majority of contractual oil-and-gas-related services performed on the jack-up rig, especially those services rendered under contracts for vessel repair, have been deemed maritime because they relate to the vessel's overall mission. *Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 549 (5th Cir. 2002), *overruled on other grounds by Grand Isle*, 589 F.3d at 788.

We agree with the district court, though, that our caselaw is not definitive. A fact-specific inquiry is needed.

B. *Fact-Specific Inquiry*

When the historical treatment of similar contracts does not resolve the issue of whether a maritime contract exists, we consider these six questions:

(1) What does the specific work order in effect at the time of injury provide?
(2) What work did the crew assigned under the work order actually do?
(3) Was the crew assigned to work aboard a vessel in navigable waters?
(4) To what extent did the work being done relate to the mission of that vessel?
(5) What was the principal work of the injured worker?
(6) What work was the injured worker actually doing at the time of injury?

6

*Davis*, 919 F.2d at 316. Answers to these questions depend entirely upon the nature or character of the work performed even when the work is performed in the Gulf. *See Hoda*, 419 F.3d at 381.

The district court considered these questions before determining that the contract was a maritime one. We start our review by noting that a jack-up rig is a "vessel." *Campbell v. Sonat Offshore Drilling, Inc.*, 979 F.2d 1115, 1122-23 (5th Cir. 1992). Thus, Baloney and the crew were assigned to work aboard a vessel in navigable waters. The specific work order in effect at the time of the injury called for weld testing on a recently repaired crane attached to the vessel. The crew actually did this work, and in fact Baloney was doing this work at the time he was injured. This work on an appurtenance of the vessel such as a crane is characterized as "vessel repair services" and is therefore maritime work. *See Diamond Offshore*, 302 F.3d at 549.

The work order also called for weld testing on drilling pipeline, and the crew actually performed this work before starting the crane work. Because the record does not precisely explain the nature of the pipeline work, it is not clear whether it would be considered work on an appurtenance of a vessel. However, as explained below, it is undoubtedly work on equipment used by a vessel to carry out its fundamental mission and purpose.

The parties' dispute on appeal largely concerns the fourth question: Was the crane and pipeline work performed on the ENSCO 99 related to its mission? We have already analyzed the nature of a contract that called for well-casing services to be performed from a jack-up rig. *Campbell*, 979 F.2d at 1117-18. Such services did not involve any type of repairs or construction on the rig itself or its appurtenances. The court explained that the rig was not "be[ing] used as a mere work platform to execute a particular service contract"; rather, the rig's equipment, such as its "derrick and draw works," were necessary for the casing work. *Id.* at 1123. The court concluded that the casing

7

work was "'inextricably intertwined with maritime activities since it required the use of a vessel and its crew.'" *Id.* (quoting *Davis*, 919 F.2d at 317). Ten years later, a different panel undertook a similar analysis and reached the same result in a case involving a contract to perform well-casing services from a jack-up rig. *See Demette* 280 F.3d at 494-95. The court stated that "circuit precedent virtually compels the conclusion that this is a maritime contract." *Id.* at 501.

Similarly, in another appeal we considered a worker who was injured while tightening nuts on the blowout preventers; we had to resolve whether a contract that involved installing and changing blowout preventers on a wellhead was maritime. *Hoda*, 419 F.3d at 381. We recognized that "the torquing services [the contractor] provided pertain solely to oil and gas development and, in and of themselves, have nothing to do with traditional maritime activity or commerce." *Id.* at 382. Nevertheless, the court explained that "the torquing up and torquing down of the blow-out preventer stacks was but a discrete function in a carefully orchestrated series of actions conducted by [the drilling company] during the drilling of the well." *Id.* at 383. The court further expounded that the contractor's services "were 'inextricably intertwined' with the activity on the rig, were dependent on [the drilling company's] placement of the equipment on which [the contractor's] employees worked, and could not be performed without the rig's direct involvement." *Id.* The court therefore concluded that the torquing "'is an integral part of drilling, which is the primary purpose of the vessel.'" *Id.* (quoting *Demette*, 280 F.3d at 501). Accordingly, the court held that the contract was a maritime contract.

The only Fifth Circuit case cited by Bayou that arguably supports the contrary conclusion is *Domingue*, 923 F.2d 393. There, the operative contract

called for wireline services[1] to be performed from a jack-up drilling rig, but the plaintiff, who was not employed by either contracting party, was injured while performing well-testing services unrelated to the wireline services. *Id.* at 394. It was in this context that we ultimately concluded that the contract was non-maritime. *Id.* at 397-98; *see Campbell*, 979 F.2d at 1122. *Domingue* has little application here because Baloney was a Bayou employee and was injured performing services pursuant to Ensco's work order. Moreover, to the extent that Bayou relies on *Domingue* for the suggestion that repair services performed to aid the vessel's oil and gas exploration capabilities are incidental to its mission, *Campbell* and *Hoda* directly discussed and held that contract work aboard a rig in furtherance of oil drilling, particularly when that work is to repair the vessel's functionality, is inseparable from the rig's mission.

Bayou's attempts to distinguish *Campbell* and *Hoda* are unconvincing. First, Bayou advances the idea that the rig lost its vessel character when jacked up. Bayou offers no binding authority for this proposition,[2] and our precedent is to the contrary. The place where the injury occurred is not dispositive of the maritime inquiry, and we have never looked to whether the vessel is temporarily anchored to the sea floor to determine the nature of the work performed. *See Hoda*, 419 F.3d at 381. More broadly, Bayou argues that "[b]ecause the work performed by Darnell Baloney did not relate to the

---

[1] "A team performing a wireline operation services partially drilled oil and gas wells and also gathers geophysical data relevant to production." 923 F.2d at 394 n.3.

[2] Bayou does cite one case, a Louisiana appellate case, containing language suggesting that a jacked-up vessel in some sense loses its vessel character. *Brennan v. Shell Offshore, Inc.*, 612 So.2d 929 (La. App. 1993). In that case, the plaintiff was working as a welder on a jack-up barge that performed services on wellheads and fixed platforms in the Gulf of Mexico. *Id.* at 932-33. The court held that his work was not maritime: "The jackets [the plaintiff] welded were attached to fixed platforms. The fact that the welding occurred on a jack-up barge is not determinative. The barge when jacked up was similar to a fixed platform." *Id.* at 934. However, *Brennan* is distinguishable in that the contract was not for repairs to a vessel; rather, the vessel was to be used as a work platform for repairs to fixed structures.

9

navigation functions of the Ensco 99, the work, and thus the contract, must be considered non-maritime." While this idea has been expressed in the tort law context,[3] adopting this narrow view of maritime contracts would be a departure from our precedent, which requires us to look at the vessel's mission, not whether the services performed relate to the vessel's navigation. *Cf. Diamond Offshore*, 302 F.3d at 537; 549-50 (finding a maritime contract even though the contractual work did not relate to the navigation functions or movement of the rig).

Bayou's work aboard the ENSCO 99 was integral to the vessel's primary purpose. The drilling pipeline which Baloney repaired was indisputably part of the vessel's equipment. Further, the crane being repaired by Baloney when he was injured was correctly deemed to be an appurtenance to the vessel. This equipment, and in particular the functional crane, was essential to the vessel's mission of drilling for oil and gas. The ENSCO 99 was not merely being used as a platform to perform some work unrelated to the vessel's mission. *See Domingue*, 923 F.2d at 394. Rather, Baloney was injured while performing repairs that were critical to the fulfillment of the vessel's mission.

Under the fact-specific *Davis* inquiry, Baloney was performing work under a maritime contract, which recognizes the enforceability of indemnity clauses.

AFFIRMED.

---

[3] Bayou's primary support for this argument is a concurrence in *Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 213 (5th Cir. 2013) (Clement, J., concurring). *Barker* concerned whether the plaintiff's tort action was maritime in nature. 713 F.3d at 217 n.5. Judge Clement drew a clear line between our tort and contracts cases: "[C]ontract cases with similar fact patterns are not binding on whether this tort action is maritime in nature, since tort and contract cases apply different tests to determine whether maritime law applies." *Id.*

UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

# BILL OF COSTS

Darnell Baloney _____ v. Ensco, Inc. et al _____ No. 13-30796

NOTE: The Bill of Costs is due in this office within 14 days from the date of the opinion, See FED. R. APP. P. & 5TH CIR. R. 39. Untimely bills of costs must be accompanied by a separate motion to file out of time, which the court may deny.

The Clerk is requested to tax the following costs against: Appellant

| COSTS TAXABLE UNDER Fed. R. App. P. & 5th Cir. R. 39 | REQUESTED | | | | ALLOWED (If different from amount requested) | | | |
|---|---|---|---|---|---|---|---|---|
| | No. of Copies | Pages Per Copy | Cost per Page* | Total Cost | No. of Documents | Pages per Document | Cost per Page* | Total Cost |
| Docket Fee ($450.00) | | | | | | | | |
| Appendix or Record Excerpts | | | | | | | | |
| Appellant's Brief | | | | | | | | |
| Appellee's Brief | 10 | 38 | 0.15 | 57 | 7 | 38 | .15 | 39.90 |
| Appellant's Reply Brief | | | | | | | | |
| Other: | | | | | | | | |
| | | | Total $ | 57 | | Costs are taxed in the amount of $ | | 39.90 |

Costs are hereby taxed in the amount of $ 39.90 this _____ day of _____, .

LYLE W. CAYCE, CLERK
By /s/ Audrey Ramotar
Deputy Clerk

State of State of Louisiana,
County of Parish of Orleans

I Zoe Vermeulen _____, do hereby swear under penalty of perjury that the services for which fees have been charged were incurred in this action and that the services for which fees have been charged were actually and necessarily performed. A copy of this Bill of Costs was this day mailed to opposing counsel, with postage fully prepaid thereon. This 17 day of June, 2014.

/s/Zoe W. Vermeulen
(Signature)

Attorney for Stone Energy Offshore, LLC

*SEE REVERSE SIDE FOR RULES
GOVERNING TAXATION OF COSTS

UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

# BILL OF COSTS

**NOTE:** The Bill of Costs is due in this office within *14 days from the date of the opinion*, See FED. R. APP. P. & 5TH CIR. R. 39. Untimely bills of costs must be accompanied by a separate motion to file out of time, which the court may deny.

Darnell Baloney _____ v. Ensco, Inc., et al _____ No. 13-30796

The Clerk is requested to tax the following costs against: Darnell Baloney

| COSTS TAXABLE UNDER Fed. R. App. P. & 5th Cir. R. 39 | REQUESTED | | | ALLOWED (If different from amount requested) | | | |
|---|---|---|---|---|---|---|---|
| | No. of Copies | Pages Per Copy | Cost per Page* | Total Cost | No. of Documents | Pages per Document | Cost per Page* | Total Cost |
| Docket Fee ($450.00) | | | | | | | | |
| Appendix or Record Excerpts | | | | | | | | |
| Appellant's Brief | | | | | | | | |
| Appellee's Brief | 10 | 39 | 0.15 | 58.5 | 7 | 39 | .15 | 40.95 |
| Appellant's Reply Brief | 10 | 1 | 1.5 | 15 | 7 | 1 | 1.50 | 10.50 |
| Other: | | | | | | | | |

Total $ 73.5

Costs are hereby taxed in the amount of $ 51.45 this _____ day of _____, Costs are taxed in the amount of $ 51.45

State of State of Louisiana, Parish of Orleans
County of

I Stuart G. Richeson _____, do hereby swear under penalty of perjury that the services for which fees have been charged were incurred in this action and that the services for which fees have been charged were actually and necessarily performed. A copy of this Bill of Costs was this day mailed to opposing counsel, with postage fully prepaid thereon. This 11th day of June, 2014.

LYLE W. CAYCE, CLERK
By [signature]
Deputy Clerk

/s/Stuart G. Richeson
(Signature)

Attorney for Ensco Offshore Company

*SEE REVERSE SIDE FOR RULES GOVERNING TAXATION OF COSTS

# United States Court of Appeals
## FIFTH CIRCUIT
### OFFICE OF THE CLERK

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE**
**NEW ORLEANS, LA 70130**

June 27, 2014

Mr. William W. Blevins
Eastern District of Louisiana, New Orleans
United States District Court
500 Poydras Street
Room C-151
New Orleans, LA 70130

No. 13-30796    Darnell Baloney, et al v. Ensco, Inc., et al
                USDC No. 2:11-CV-2730

Dear Mr. Blevins,

Enclosed is a copy of the judgment issued as the mandate and a copy of the court's opinion.

Enclosed for the district court and counsel are the approved bill of costs (2).

Sincerely,

LYLE W. CAYCE, Clerk

By: /s/ Dantrell Johnson
Dantrell L. Johnson, Deputy Clerk
504-310-7689

cc:
    Honorable Jane T. Milazzo
    Mr. Sidney J. Angelle
    Mr. Eric Blaise Berger
    Mr. Stuart Glen Richeson
    Mr. William B. Schwartz
    Ms. Karen Waters Shipman
    Mr. Charles Rowand Talley
    Ms. Zoe Wilde Vermeulen
    Mr. William Daniel Wellons

P.S. to Judge Milazzo:  A copy of the opinion was sent to your office via email the day it was filed.